IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DERMAFOCUS LLC | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civ. No. 15-654-SLR |
| ULTHERA, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

Brian E. Farnan, Esquire and Michael J. Farnan, Esquire of Farnan LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Jonas Jacobson, Esquire and Richard E. Lyon, III, Esquire of Dovel & Luner, LLP.

John C. Phillips, Jr., Esquire and Megan C. Haney, Esquire of Phillips, Goldman, McLaughlin & Hall, P.A., Wilmington, Delaware. Counsel for Defendant. Of Counsel: John B. Sganga, Esquire, Justin Gillett, Esquire, and Matthew S. Bellinger, Esquire of Knobbe, Martens, Olson & Bear, LLP.

**MEMORANDUM OPINION**

Dated: August 11, 2016
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

On July 29, 2015, plaintiff DermaFocus LLC ("plaintiff") filed a patent infringement complaint against defendant Ulthera, Inc. ("defendant") alleging direct, induced, contributory, and willful infringement.[1] (D.I. 1) Plaintiff filed an amended complaint on October 6, 2015. (D.I. 11) Presently before the court is defendant's motion to dismiss the first amended complaint ("FAC") for failure to state a claim (D.I. 12).[2] The court has jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## II. BACKGROUND

As noted, the FAC includes claims of direct, induced, contributory, and willful infringement of United States Patent No. 6,113,559 ("the '559 patent"). (D.I. 11 at ¶ 1) The '559 patent, entitled "Method and Apparatus for Therapeutic Treatment of Skin with Ultrasound," issued on September 5, 2000, and describes a method

> of reducing human skin wrinkles, including applying a focused ultrasound beam to a region of human skin to stimulate or irritate a dermis layer in the region of the skin without adversely damaging an epidermis layer in the region of the skin so as to cause a change in the dermis layer of the skin that results in a change in a smoothness of the epidermis layer of the skin. In particular, relatively low power, low frequency focused ultrasound is applied to the dermis layer for a period of time sufficient to cause a biological response in the body wherein the biological response causes synthesis and/or production of new connective tissue that results in reduction or elimination of human skin wrinkles.

(*Id.*, ex. A, abstract)

In the FAC, plaintiff alleges that defendant's "Ulthera System" or "Ultherapy" are used for the "non-invasive lifting and tightening of the skin using focused ultrasound technology." (D.I. 11 at ¶ 10) As described by defendant, "the Ulthera® System is a

---

[1] Defendant was served with a copy of the complaint on July 30, 2015. (D.I. 11, ¶ 13)
[2] Defendant filed a motion to dismiss the initial complaint. (D.I. 7) Plaintiff filed the amended complaint instead of opposing the motion. (D.I. 11)

multi-component system consisting of a cart, a control unit with an integrated touchscreen, a handpice with a cable, and various transducers that are purchased individually and that can be interchangeably attached to the handpiece." (D.I. 13 at 8) The various transducers are used to treat skin at different depth levels. (*Id.*) The products are "purchased, leased, or otherwise obtained" by medical professionals from defendant. (D.I. 11 at ¶ 11) Prior to purchasing the products, medical professionals ("users") may schedule a demonstration or set up a meeting with an "Ultherapy specialist." (D.I. 11 at ¶ 12) Plaintiff alleges defendant "instruct[s] users to use the Ulthera System in its intended manner." (D.I. 11 at ¶ 12)

In September 2004, defendant's founder and current board member, Michael Slayton ("Slayton"), was listed as an inventor on Patent Application No. 10/944,499 ("the '499 application"), entitled "Method and System for Ultrasound Treatment with a Multi-Directional Transducer." (D.I. 11 at ¶ 13) The assignee of the '499 application was Guided Therapy Systems, L.L.C. In February 2005, an Information Disclosure Statement ("IDS") was filed in connection with the '499 application; the '559 patent was one of seven listed "material references" for determining patentability. (*Id.*, at ex. D)

### III. STANDARD OF REVIEW

A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted)

2

(interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a three-part analysis when reviewing a Rule 12(b)(6) motion. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d. Cir. 2016). In the first step, the court "must tak[e] note of the elements a plaintiff must plead to state a claim." Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." Lastly, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (citations omitted).

Under *Twombly* and *Iqbal*, the complaint must sufficiently show that the pleader has a plausible claim. *McDermott v. Clondalkin Grp., Inc.*, Civ. No. 15-2782, 2016 WL 2893844, at *3 (3d Cir. May 18, 2016). Although "an exposition of [the] legal argument" is unnecessary, *Skinner v. Switzer*, 562 U.S. 521 (2011), a complaint should provide reasonable notice under the circumstances. *Id.* at 530. A filed pleading must be "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," such that "the factual contents have evidentiary support, or if so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Anderson v. Bd. of Sch. Directors of Millcreek Twp. Sch. Dist.*, 574 F. App'x 169, 174 (3d Cir. 2014) (quoting Fed. R. Civ. P. 11(b)). So long as plaintiffs do not use "boilerplate and conclusory allegations" and "accompany their legal theory with factual allegations that make their theoretically viable claim plausible," the Third Circuit has held "pleading upon information and belief [to be] permissible [w]here it can be shown that the requisite factual information is peculiarly

3

within the defendant's knowledge or control." *McDermott*, 2016 WL 2893844, at *4 (quotation marks, citation, and emphasis omitted).

As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

In the context of patent litigation,[3] it is logical to presume that a defendant has greater access to and, therefore, more information about its accused method.[4] The degree of public information about any accused method varies widely, as does the degree of specificity with which any asserted invention is claimed. Given the focus of the above articulated standard of review[5] on reasonable notice of plausible claims under the circumstances, the question a court must address with each case is whether the plaintiff at bar has provided sufficient information to allow the court to determine

---

[3]The court recognizes that plaintiffs no longer have Form 18 as a safe harbor for pleading infringement.
[4]Or apparatus or system.
[5]Which is consistent with Rules 8 ("a short and plain statement of the clam showing that the pleader is entitled to relief") and 11 (the pleading is filed after "inquiry reasonable under the circumstances" and the factual contentions "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery") of the Federal Rules of Civil Procedure.

4

plausibility[6] and to allow the named defendant to respond to the complaint. Absent specific guidance from the Federal Circuit directing the court to front-load the litigation process by requiring a detailed complaint in every instance, the court declines to do so.[7]

## III. DISCUSSION

### A. Direct Infringement

To prove direct infringement, the patent owner must establish that one or more claims of the patent (as construed by the court) read on the accused method[8] either literally or under the doctrine of equivalents. See *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001). A plaintiff may have a plausible claim for direct infringement "sufficient to withstand *Iqbal/Twombly* scrutiny" by "specifically identifying . . . products" which "perform the same unique function as [the] patented system." *Robern, Inc. v. Glasscrafters, Inc.*, Civ. No. 16-1815, 2016 WL 3951726, at *4 (D.N.J. July 22, 2016) (citation omitted); *see also Bender v. LG Electronics U.S.A., Inc.*, Civ. No. 09-2114, 2010 WL 889541, at *6 (N.D. Cal. Mar. 11, 2010). As observed by the Federal Circuit, "[a] defendant cannot shield itself from a complaint . . . by operating in such secrecy that the filing of a complaint itself is impossible." *K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013).

As noted above, the FAC includes allegations, e.g., that defendant's "Ulthera System" or "Ultherapy" is used for "non-invasive lifting and tightening of the skin using

---

[6]A context specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.
[7]And, indeed, it may not be possible for a plaintiff to describe its case-in-chief with particularity at the outset of litigation, without access to the accused method, the accused apparatus for reverse engineering, or confidential data such as source code.
[8]Or apparatus or system.

focused ultrasound technology." (D.I. 11 at ¶ 10) Independent claim 1 of the '559 patent claims a "method of rejuvenating human skin" "comprising" "focusing ultrasound energy in a dermis layer of the region of skin;" and

> depositing energy in the dermis layer sufficient to heat tissue within the layer to a temperature ranging from about 47° C to about 75° C, to stimulate or irritate a dermis layer in the region of the skin so as to cause a change in the dermis layer of the skin that results in a change in a smoothness of an epidermis layer of the skin.

(D.I. 11, ex. A at col. 10:21-32)

Defendant asserts that plaintiff did not specify "which particular combinations of components . . . allegedly infringe when used," nor did plaintiff "allege how all of the claimed method steps are performed." (D.I 13 at 9) A reading of the patent, however, reveals that: (1) the only independent claim is a method claim (not an apparatus claim); (2) the patentee used the word "comprising" in the preamble of the claim; and (3) the specification discloses that "a variety of transducer configurations can be used in the present invention," and the steps described therein "may be performed in any order." (D.I. 11, ex. A at col. 5:22-23; col. 8:17-18; col. 10:22) Moreover, it is not apparent to the court whether the information demanded by defendant[9] is in the public domain and, therefore, reasonably available to plaintiff. Under these circumstances, the court concludes that plaintiff has given defendant reasonable notice of a plausible claim for direct infringement of at least independent claim 1 of the '559 patent by use of defendant's Ulthera System.

### B. Indirect Infringement

---

[9]Defendant argues that its Ulthera System has "multiple components and can employ any of several transducers to treat tissue at various depths. The FAC does not identify which transducers compose the system that, when used, allegedly results in infringement of the '559 patent claims." (D.I. 16 at 1)

6

To establish indirect infringement, the patent owner has available two theories: active inducement of infringement and contributory infringement. See 35 U.S.C. §§ 271(b) and (c). Under § 271(b), "whoever actively induces infringement of a patent shall be liable as an infringer." "To prove induced infringement, the patentee must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (quoting *i4i Ltd. P'ship. v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010) (internal quotation marks omitted)). "[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). The knowledge requirement can be met by a showing of either actual knowledge or willful blindness. *See id*.

To establish contributory infringement, the patent owner must demonstrate the following: (1) an offer to sell, sale, or import; (2) a component or material for use in a patented process constituting a material part of the invention; (3) knowledge by the defendant that the component is especially made or especially adapted for use in an infringement of such patent; and (4) the component is not a staple or article suitable for substantial non-infringing use. See *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010) (citing 35 U.S.C. § 271(c)). Defendant "must know 'that the combination for which his component was especially designed was both patented and infringing.'" *Global-Tech*, 563 U.S. at 763 (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964)).

Defendant argues that, even though the FAC identifies a plastic surgeon by name who uses the Ulthera System "to lift or tighten his patients' skin," "the FAC fails to sufficiently identify the 'Ulthera System' and thus fails to plausibly identify any direct infringement." (D.I. 16 at 2) Consistent with the discussion above regarding direct infringement, the court will not dismiss the FAC on this basis.

Defendant further argues that the FAC fails to sufficiently plead pre-suit knowledge of the patent. The '559 patent was one of only seven prior art references listed in the IDS filed in February 2005 in connection with the '499 application. Defendant's founder and current board member, Michael Slayton, was one of two named inventors and patent applicants. There is no indication, however, that the '559 patent was mentioned again during prosecution of the '499 application[10] or otherwise by defendant before the instant litigation was filed. The facts of this case, therefore, are not as strong as those reviewed in *Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*, 2015 WL 5725768 (D. Del. Sept. 29, 2015) (the court determined that it was plausible that defendant had pre-suit knowledge based on a presentation made to defendant regarding related patents and the fact that the patent-in-suit was well known in the semiconductor industry), but not as attenuated as those reviewed in *Chalumeau Power Systems LLC v. Alcatel-Lucent*, 2012 WL 6968938 (D. Del. July 18, 2012) (in connection with three prior patent applications filed nearly a decade before suit was filed, a patent examiner asserted that the patent-in-suit was prior art). Although it is certainly conceivable that Mr. Slayton took note of the '559 patent a decade ago and shared his knowledge thereafter with others at his company, the court concludes that

---

[10]Plaintiff did not cite to any further references, nor could the court find any.

8

the allegations are neither likely nor reasonable; i.e., no plausible inference arises from the alleged facts that **defendant** had knowledge of the '559 patent in 2005.

Service of the original complaint in 2015, of course, gave defendant actual knowledge of the '559 patent. Defendant argues that, nevertheless, the FAC contains insufficient facts relating to whether defendant has the additional knowledge that third parties (its customers) are infringing the patent. (D.I. 13 at 5) Having determined, however, that plaintiff adequately pled direct infringement,[11] and given the information contained in the FAC regarding defendant's promotional and educational materials (D.I. 11, exs. B, C and E), as well as use of the accused Ulthera System by a local physician, it is plausible to infer that defendant knew that the intended use of the Ulthera System[12] (for which defendant's customers received instructions) was infringing. The court finds these allegations sufficient to plead induced infringement, that is, the FAC contains facts from which it is plausible to infer that defendant knew that its conduct would induce infringement by its customers, and had the specific intent to make it so.

With respect to contributory infringement, the FAC alleges that defendant: (1) had (at least post-suit) knowledge of the patent; (2) is selling its Ulthera System which is especially made for infringing use; (3) had knowledge of the infringing use; (4) the Ulthera System has no substantial non-infringing use: and (5) there is direct infringement. (D.I. 11 at ¶¶ 15, 16) Such allegations have passed muster under *Twombly*, *Iqbal*, and their progeny in the past, *see, e.g., Netgear, Inc. v. Ruckus Wireless, Inc.*, 852 F. Supp. 2d 470, 476-77 (D. Del. 2012); *Walker Digital, LLC v.*

---

[11]And having rejected in that analysis the notion that a complaint for patent infringement needs to match up specific instructions to claims elements.

[12]Defendant instructs its customers in the use of focused ultrasound energy to lift and tighten skin.

9

*Facebook, Inc.*, 852 F. Supp. 2d 559, 566 (D. Del. 2012). The court concludes that plaintiff has adequately pled contributory infringement in the FAC.

### C. Willful Infringement

Pursuant to § 284 of the Patent Act, once infringement has been established, the court "may increase the damages up to three times the amount found or assessed." 35 U.S.C § 284. Enhanced damages are "designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior," commonly described as "willful, wanton, malicious, bad faith, deliberate, consciously wrongful, flagrant, or . . . characteristic of a pirate." *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, __ U.S. __, 136 S.Ct. 1923, 1932 (2016). In *Halo*, the Supreme Court held that the Federal Circuit's analysis in *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007),[13] was "unduly rigid, and . . . impermissibly encumbers the statutory grant of discretion to district courts." *Id.* (citation omitted). The Court acknowledged the unfair dispositive effect of the objective recklessness prong in light of how an infringer could avoid enhanced damages with a reasonable defense designed for litigation, without the consideration of his state of mind at the time of the infringement. *Id.*; *see also Trustees of Boston Univ. v. Everlight Elecs. Co.*, 2016 WL 3976617, at *2 (D. Mass. July 22, 2016) (noting an infringer can no longer depend on a defense "created by his 'attorney's ingenuity' solely for litigation").
"[C]ulpability is generally measured against the knowledge of the actor at the time of the

---

[13]*Seagate* required a two-part test to establish willful infringement. First, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." This objective inquiry does not take into account the state of mind of the accused infringer. Second, "the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." 497 F.3d at 1371.

10

challenged conduct." *Halo*, 136 S.Ct. at 1933 (citation omitted). Moreover, under § 284, a court is not limited to recklessness and may consider all states of culpability. *Id.* Therefore, "[t]he subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id.* The inclusion of "may" reminds the court that an award of treble damages is not required and to use its discretion. *Id.* at 1931; *see Finjan, Inc. v. Blue Coat Sys., Inc.*, 2016 WL 3880774, at *15 (N.D. Cal. July 18, 2016) (applying various factors before determining that defendant's behavior was not egregious enough to award enhanced damages). The Court noted that a court "take[s] into account the particular circumstances" in its determination of whether enhanced damages are appropriate, which has been historically "reserved for egregious cases typified by willful misconduct." *Halo*, 136 S.Ct. at 1933-34.

The Supreme Court not only abrogated the "objective recklessness" standard, but also *Seagate's* requirement for clear and convincing evidence. According to the Court in *Halo*, "patent-infringement litigation has always been governed by a preponderance of the evidence standard." *Id.* at 1934. For this reason, the Court held that the lesser burden of proof was applicable. *Id.*; *see generally PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, Civ. No. 11-761, 2016 WL 3365437, at *5 (N.D.N.Y. June 16, 2016) (noting the *Halo* Court "disavowed the burden of proof prescribed by *Seagate*").

Given the implausible inferences related to pre-suit knowledge, the court grants the motion to dismiss the FAC as it relates to pre-complaint willfulness. Under the *Seagate* regime, the court dismissed allegations of willful infringement based only on

post-complaint conduct. See Aeritas, LLC v. Alaska Air Grp., Inc., 893 F. Supp. 2d 680, 685 (D. Del. 2012), reasoning that in addition to knowledge of the patent, Seagate required allegations that the alleged infringer "'acted despite an objectively high likelihood that its actions constituted infringement' of the probably valid patent." Id. at 685 (citing Seagate, 497 F.3d at 1371). The court concluded in Aeritas that "mere notice of the charge of infringement gleaned from service of the complaint [does not] pass muster for a willfulness claim." 893 F. Supp.2d at 685. Under the less rigid standard announced in Halo, however, the court will allow plaintiff's general allegations of willful infringement to withstand the motion to dismiss. See, e.g., S.O.I.TEC Silicon On Insulator Techs., S.A. v. MEMC Electronic Materials, Inc., 2009 WL 423989, at *2 (D. Del. Feb. 20, 2009).

## IV. CONCLUSION

For the aforementioned reasons, defendant's motion to dismiss (D.I. 12) is granted in part and denied in part. An order shall issue.